Nicholas Lee Turner
2406 Stanford St
Houston TX 77006
832-680-9247
turnernl@hotmail.com
Plaintiff in Pro Per

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **Nicholas Turner,** a Houston, TX resident § § § Plaintiff § § vs. § § **American Airlines Group, Inc.** dba § § **US Airways,** a Delaware § § Corporation and its agents: **Katrina Parker,** § § **Andrew Masiello, Mike Boyce, & Barb** § § **Trella** § § § Defendant(s) § | CIVIL ACTION NO. **H-14-2997** <br><br> **JURY TRIAL REQUESTED** |

## ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff, at all times relevant, was a Phoenix, Arizona based employee of US Airways and was defined as such per the Americans with Disabilities Act and the ADA Amendments Act, 42 U.S.C.§ 12111(4) **"ADA."**

1

2. Defendant, American Airlines Group, Inc. dba US Airways, is a Delaware corporation, headquartered in Ft. Worth, Texas which is authorized to conduct business and is currently conducting business in the states of Arizona and Texas.

3. At all relevant times, US Airways has continuously been an employer engaged in an industry affecting commerce, employing fifteen or more employees, within the meaning of the ADA.

## JURISDICTION AND VENUE

4. Plaintiff brings this action under the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq,* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, as amended.

5. This Court has jurisdiction based on

    a. Diversity of Citizenship 28 USC §1332

    b. Supplemental Jurisdiction 28 USC §1367

    c. 28 USC §1331 in that the claims arise under federal law

6. Personal jurisdiction in this Court is proper.

7. Venue in this Court is proper 28 U.S.C. §1391.

8. Plaintiff has exhausted all administrative remedies available to him, and therefore jurisdiction is proper.

## STATEMENT OF FACTS

9. Nicholas Turner began his employment with US Airways as a flight attendant in August of 2006.

10. His duties as a flight attendant included ensuring passenger safety and comfort, preparing and serving food and beverages to guests, and providing customer service.

11. Mr. Turner performed his job duties consistent with US Airways policy for the

entire duration of his employment with US Airways.

12. Mr. Turner often received positive feedback from supervisors, co-workers and customers in the form of A&B cards which are used to recognize a job well done.

13. On or around October of 2004 Mr. Turner was diagnosed with Bipolar I Disorder. Bipolar disorder is a stigma ridden mental illness that can bring severe high and low moods and changes in sleep, energy, thinking, and behavior.

14. Bipolar Disorder is marked by panic attacks, depressive periods, and manic episodes. Any of the three may last only a few minutes or onwards of weeks in duration.

15. Manic episodes present with behavior that is out of character and risky; coupled with increased energy, agitation, and impulsivity, and often occur without warning.

16. Mr. Turner mitigates his symptoms with the use of prescription medication.

17. When Mr. Turner's symptoms prevented him from working, he managed his time away from work using a fully authorized intermittent FMLA.

18. InFlight Administration Supervisors Mike Boyce and Ronald Parkinson had knowledge of Plaintiffs disability since 2008

19. Despite having Bipolar disorder, the Plaintiff is able to perform all essential functions of his job position.

20. On or about May 27th, 2013 Mr. Turner began what is referred to as "rapid cycling," and a manic episode ensued.

21. On May 30th, 2013 Mr. Turner boarded an aircraft in Phoenix, Arizona and traveled to Berlin, Germany utilizing his non revenue travel benefits. His travel was completed on May 31st, 2013.

22. The plaintiff used proper call in procedures on May 31st, 2013 to report his absence from work for the next six days.

23. Mr. Turner travelled back to Phoenix, Arizona on June 7th, 2013.

24. In the days following his return to Phoenix, Arizona, Mr. Turner discussed the manic episode with his treating psychiatrist and the role his recent medication change may have played in the event.

25. Plaintiff had looked into treatment options in Phoenix and Philadelphia which would improve his overall job performance.

26. Mr. Turner's supervisor, Katrina Parker, made frequent negative comments regarding his use of FMLA.

27. On August 21st, 2013 Plaintiff was called into a meeting with InFlight Supervisors Katrina Parker and Andrew Masiello, and Base Manager Barb Trella to question a day he had recoded using his intermittent FMLA earlier that same month. InFlight Administration Supervisor Mike Boyce, who was also in attendance, reaffirmed Mr. Turner's use of FMLA on the day in question did not represent any wrong doing.

28. At the same meeting on August 21st, 2013 Mr. Turner was asked about the travel that took place beginning May 30, 2013.

29. While being questioned Mr. Turner panicked and initially denied the travel took place and fabricated an account out of fear that more people would have to unnecessarily learn of his condition.

30. The meeting concluded with Plaintiff being placed on paid leave until August 28th, 2013 pending further investigation.

4

31. During that investigative period Plaintiff approached InFlight Supervisor Andrew Masiello, and disclosed his disability and why he had initially been dishonest about the travel in May. He made it clear to Mr. Masiello that he had been seeking out treatment options that would help improve not only his job performance but home life as well. Mr. Turner asked for his help. Mr. Masiello sympathized with Plaintiff and shared that his best friend also has Bipolar Disorder, but there was nothing he can do for him.

32. During the investigative period Mr. Turner came down with shingles due to the stress he was facing. Mr. Turner's union representative asked to postpone the next meeting since he was in pain, US Airways denied that request.

33. During the August 28th 2013 meeting, Mr. Turner was again pressed about the travel that began on May 30th. Documentation was produced by Katrina Parker and Barb Trella showing Mr. Turner travelled on May 30th. Plaintiff obliged and agreed he had indeed travelled on May 30th.

34. At that time Plaintiff was presented with fictitious travel records and falsely accused of travelling on a sick day, June 2nd, 2013. He vehemently denied travelling on a sick day.

35. Mr. Turner was asked to explain his actions and he did so, in detail, with no reprieve.

36. Plaintiff was not allowed time to produce documentation refuting the company's claim of travel on a sick day.

37. Plaintiff was terminated moments later for allegedly violating US Airways Policy. Termination for a first-time offense is inconsistent with US Airways discipline policy. Other similarly-situated US Airways employees were not terminated for alleged first time offenses to the discipline policy.

38. US Airways actually terminated Mr. Turner due to a manic episode associated with his disability, which is unlawful under ADA antidiscrimination provisions.

39. Plaintiff was denied unemployment compensation because US Airways provided false information regarding Mr. Turner's tenure and reasons for separation to the Arizona Department of Economic Security.

40. The emotional distress suffered by Plaintiff caused him to be hospitalized for four days in October of 2013 and he has endured two subsequent shingle outbreaks.

41. Through diligent efforts it has taken one year for Mr. Turner to find comparable employment since his unlawful termination.

## COUNT I
## DISCRIMINATION UNDER THE AMERICANS WITH DISABILITES ACT
## 42 U.S.C. §12102

42. Plaintiff realleges paragraphs 1 through 41.

43. Plaintiff was an employee of US Airways.

44. Plaintiff has a physical or mental impairment that substantially limits one or more major life activities.

45. Plaintiff is qualified to perform the essential duties of his position with or without a reasonable accommodation.

46. Defendant is an employer under the ADA.

46. One or more agent(s) of the Defendant knew of Plaintiff's disability

47. Defendant treated Plaintiff disparately as compared to other similarly situated nondisabled employees because of his disability.

48. Defendants discriminated and retaliated against Plaintiff by terminating him for exhibiting symptoms of his disability.

49. Such termination constitutes an unlawful discharge as contemplated by the ADA.

50. Plaintiff's disability was the unlawful cause of Defendant's discriminatory conduct.

51. As a direct, intentional, and willful consequence of such illegal conduct, Plaintiff suffered adverse employment actions including termination of employment.

## REQUEST FOR RELIEF

**WHEREFORE**, the Plaintiff requests:

52. Immediate reinstatement to position held at US Airways with full seniority and longevity intact.

53. An award of backpay and damages in the amount of $267,688.00

54. Reasonable attorneys' fees and other expenses under the ADA pursuant to 42 U.S.C. § 12117

55. Any further relief the which the Court may deem appropriate

## DEMAND FOR JURY TRIAL

56. Plaintiff hereby requests a jury trial on all issues so triable.

RESPECTFULLY SUBMITTED December 30, 2014

By: Nicholas Turner

Plaintiff in Pro Per